SAMUEL BOWLER v. JULIUS BRAUN and Others.[1]

November 27, 1895.

Nos. 9432—(64).

**Promissory Note—Second Indorser—Parol Evidence.**

> Where a person not connected with the original consideration of a note indorses it after a prior indorsement by the payee, and below his signature, the law conclusively presumes it to have been done in aid of the negotiation of the note, and the party thereby becomes a second indorser; and it is not competent to vary the legal effect of that indorsement by parol evidence, as between the second indorser and a subsequent holder of the note, whether the latter is an innocent purchaser or not.

Action in the district court for Scott county against Julius Braun, Mathilda Braun and John Niemann. The jury rendered a verdict in favor of plaintiff for $602.50. From a judgment entered in pursuance of the verdict and also from an order, Cadwell, J., denying a motion for a new trial, defendant Niemann appealed. Affirmed.

*Southworth & Coller*, for appellant.

*F. C. Irwin*, for respondent.

BUCK, J. On November 14, 1893, the plaintiff, a banker, having in his hands, for collection, a note belonging to the defendant John Niemann, collected it by receiving the interest due and a new note for the principal, of $550, from the makers, Julius Braun and Mathilda Braun, payable to John Niemann, the same payee. The next day after the collection was made, the new note and the interest paid, less plaintiff's charges, were delivered to the payee, John Niemann, and by him taken to his home, and kept there for five or six days, when he and his son, Fritz Niemann, also one of these defendants, returned to the bank, and the new note was purchased by the plaintiff from the payee, John Niemann. At the time the note was brought to the bank, and during the negotiations for its sale, there were no indorsements upon it. The plaintiff, however, during such negotiations, and before he bought the note, told John Niemann and Fritz Niemann

1 Reported in 65 N. W. 124.

that he would not buy it unless they would both indorse it. This was said to them on the day when the new note and interest were delivered. They would not then indorse it, but they returned in five or six days, when the plaintiff repeated the offer to buy the note if they would indorse it, giving as his reason for his refusal to otherwise buy it that he had understood that John Niemann had signed all of his property over to his son, Fritz Niemann. They both finally agreed to indorse the note if the plaintiff would discount it, and, before the money was paid over, both signed the note upon the back thereof; and, as John Niemann could not write his name, Fritz Niemann signed it for him, and he made his mark upon the back of the note, and below the signature the defendant Fritz Niemann signed his own name. Upon the money being paid, they delivered the note to the plaintiff so indorsed, with the signature thereon of one E. E. Chard, as a witness to the signature of John Niemann.

The note, with the signatures thereon, is as follows:

"$550.00. Belle Plaine, Minnesota, Nov. 14, 1893.

"On April 14, 1894 (without grace) after date we promise to pay to the order of John Niemann, five hundred and fifty dollars with interest at the rate of ten per cent. per annum until paid and it being the intention that this note, if not paid at maturity, shall bear the same rate of interest thereafter as before, until paid.

"No. ———. Due ———. Value received.

"Julius Braun.
"Mathilda Braun."

Indorsed on back of note:
His
"John X Niemann.
Mark
"Witness: E. E. Chard.
"Fritz Niemann."

Both of the Niemanns claim that Fritz Niemann wrote his name across the back of the note at the cashier's request, as a witness to his father's signature. This was denied by the plaintiff, and the jury, by their verdict, found against the defendant. It is claimed by the plaintiff that Fritz Niemann was a second indorser, and that he

63 M.—3

signed for the purpose of procuring credit for the makers of the note, and thereby having the plaintiff discount it. This was denied by the appellant, Fritz Niemann.

There was no plea that Fritz Niemann signed as a guarantor, or that his signing was void, under the statute of frauds, for want of an express consideration; but, as this was not objected to, we will treat the question of his being a guarantor or indorser as one at issue between the parties, although the principal contention arising upon the evidence was whether Fritz Niemann signed the note as a witness.

An indorsement is said by the law books to be the writing of one's name upon the instrument, with intent to render liable the party who warrants payment of the instrument, provided it is duly presented to the principal at maturity, not paid by him, and such failure is duly notified to the indorser. 1 Daniel, Neg. Inst. § 666. If the indorser is the payee of commercial paper, and it is indorsed in the usual form, parol testimony is inadmissible to make his liability other than that of an indorser. Coon v. Pruden, 25 Minn. 105. In such cases there is no ambiguity or uncertainty, because the law defines the character in which the party signs, and there is nothing to explain. The apparent meaning and legal effect of the signature is indicated by its place upon the note. Whatever parol evidence may have been introduced upon the trial bearing upon the question of Fritz Niemann's being an indorser or guarantor did not change the legal effect of his indorsement, and its admission does not seem to be complained of as error by either party. The plaintiff could not do so consistently, for he had a verdict, and that verdict must be held conclusive upon the question of the intent with which Fritz Niemann signed his name so far as it is based upon any parol testimony. Except as to Fritz Niemann's signing as a witness, the plaintiff was entitled, as a matter of law, to recover upon the note in question, assuming that Fritz Niemann wrote his name upon the back of the note not as a witness, but below the payee's name, for the purpose of having it discounted by the plaintiff.

Whatever may be the holding of courts in other jurisdictions, we are of the opinion, and so hold, that where a person not connected with the original consideration of a note indorses it after a prior indorsement by the payee, and below the signature of such payee, the law

conclusively presumes it to have been done in aid of the negotiation of the note, and the party thereby becomes a second indorser, and that it is not competent to vary the legal effect of that indorsement by parol evidence as between such indorsers and a subsequent holder of the note, whether the latter is an innocent purchaser or not. In this case his name appears on the note as a second indorser, and not a guarantor. His undertaking was not a collateral, but a direct, one, and made in the usual form of indorsements. He was entitled to the protection which the rule of the law merchant guaranties to all such signers, viz. that he should be promptly notified that the primary debtor had dishonored the instrument. This was the course pursued in the case before us.

That he intended to bind himself in some shape is quite apparent, and there might be force in saying that, as he did not pledge his responsibility in the form of a guaranty, he did not so intend, and that, as he signed his name in the shape of a regular indorser, he intended thereby to make a new, substantial, and responsible contract. His signing was to give efficacy and strength to the note, and thereby aid in its being discounted by the plaintiff. The danger of allowing such regular indorsements to be varied by the uncertainties of parol evidence is well illustrated by this case, where this regular indorser testified that he did not sign in any other capacity than as a witness; and, foiled in this attempt, by the verdict of a jury, he now seeks to have himself regarded as a guarantor, and, because the consideration was not expressed in the guaranty, alleges that he is not bound at all. The safety of the commercial business of the country will be best subserved by preventing the dishonest, the selfish, and the forgetful from varying their written obligations by parol evidence in cases of this kind. We do not refer to the rule as between the payee and the indorser, or as to irregular indorsements, but between the second indorser and the party who discounted the note. The doctrine laid down by the court in National Bank of Bellows Falls v. Dorset Marble Co., in 61 Vt. 106, 17 Atl. 42, we consider the correct one, viz.: "But in the case of regular indorsements, that is, indorsements in blank, of third persons, under the name of the payee, a different rule pretty generally prevails; and such indorsements are held to impose only the obligation of second indorsers; and parol evidence is not received to vary that obliga-

tion, because it is said that there is no ambiguity arising from a regular indorsement in respect of the nature of the obligation intended to be assumed, as there is from an irregular indorsement, for on the face of the paper a regular indorser is liable as second indorser, and that it is no more competent to vary the legal effect of a written instrument by parol evidence than it is to vary its express terms." Certainly, such a rule is far better and safer than one which allows extrinsic parol evidence to vary the legal effect of what we also regard as the express terms of the instrument.   We not only believe this to be sound law, but that it is in accordance with the general practice in commercial business, not only in this, but in many other states; and to overturn this doctrine, we believe, would be disastrous, and full of peril.   See, also, the following authorities:   Perry v. Friend, 57 Ark. 437, 21 S. W. 1065; Pierce v. Mann, 17 Pick. 244.

The order denying the motion for a new trial is affirmed.

CANTY, J.   I concur in the foregoing opinion, for the reason that Fritz Niemann, having indorsed under John Niemann, appears on the face of the paper to be a second indorser, and must be held as such, if held at all (see People's Bank v. Rockwood, 59 Minn. 420, 61 N. W. 457); that he may offer parol evidence to show want of consideration for his indorsement, but not for the purpose of bringing his agreement as surety within the statute of frauds.   This point I have lately discussed in my concurring opinion in Peterson v. Russell, 62 Minn. 220, 64 N. W. 555.[2]

[2] At page 225.